## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| ROBERT A. BROWNE, SR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. _____ |
| BANK OF AMERICA, N.A., | § | |
| | § | With Jury Demand Endorsed |
| Defendant. | § | |

## COMPLAINT

Plaintiff, Robert A. Browne, Sr. ("Plaintiff"), by and through counsel, and for his Complaint against Defendant, Bank of America, N.A. ("Defendant" or "BANA"), states as follows:

### I. INTRODUCTION

1.      Defendant has engaged in willful, malicious, harassing and deceptive actions against Plaintiff in furtherance of its relentless efforts to illegally collect an unsecured debt from Plaintiff during his subject Chapter 7 bankruptcy case and post-discharge of the debt, where Defendant knew the debt was subject to the bankruptcy automatic stay and later discharged as to Plaintiff's personal liability and Plaintiff and his attorney had made several cease and desist requests to Defendant. Defendant made harassing and deceptive contacts with Plaintiff by sending him billing statements and correspondences demanding payment and making collection calls to him. Also, Defendant impermissibly obtained and used Plaintiff's consumer report from Experian and reported false derogatory information to Equifax to be reported on Plaintiff's credit

report -- all in furtherance of its illegal actions taken to coerce Plaintiff to pay the subject debt which was uncollectible.

2.    Specifically, Plaintiff asserts claims against Defendant for its violations of: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, (known as the Fair Credit Reporting Act, "FCRA"); 2) the Tex. Fin. Code § 392.001 *et. seq.,* known as the Texas Debt Collection Act ("TDCA"); 3) the common law tort of invasion of privacy; and 4) the automatic stay and discharge injunction of the United States Bankruptcy Court of the Eastern District of Texas, Sherman Division ("Bankruptcy Court"). Plaintiff seeks to recover actual, statutory, and punitive damages, and legal fees and expenses against Defendant.

## II. PARTIES

3.    Plaintiff is a natural person residing in Denton County, Texas and is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c); and the TDCA, Tex. Fin. Code § 392.001(1).

4.    Defendant is a national bank which may be served by delivering citation to its registered agent, CT Corporation System, 1999 Bryan St. Suite 900 Suite 2900, Dallas, Texas 75201-4234.

5.    Defendant is a "person" and a "user" of consumer credit and other financial information, as said terms are defined under the FCRA, 15 U.S.C. § 1681a(b), and a "creditor," "debt collector" and/or "third-party debt collector," under the TDCA, Tex. Fin. Code §§ 392.001(3)(6) and (7).

6.    The debt at issue that Defendant was attempting to collect from Plaintiff was a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

**COMPLAINT**                                    -Page 2-

7.    Defendant is a furnisher of consumer credit information to Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively the "Credit Reporting Agencies" or "CRAs").

### III. JURISDICTION AND VENUE

8.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 15 U.S.C. § 1681p.

9.    Venue in this district is proper because Defendant transacts business in this district, Plaintiff filed his subject bankruptcy case in this district and the conduct complained of occurred in this district.

### IV. FACTUAL ALLEGATIONS

**A.    The Debt for the Subject Accounts was Included in Plaintiff's Bankruptcy Case.**

10.    Prior to Plaintiff filing his subject Chapter 7 Bankruptcy Case, Defendant asserted pre-petition claims against him in its attempt to collect on two (2) unsecured accounts for consumer debt he allegedly owed which required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof, and the same was primarily for personal, family, or household purposes.

11.    On August 29, 2017, Plaintiff filed his Chapter 7 bankruptcy case, case number 17-41851 ("Bankruptcy Case") in the Bankruptcy Court. Along with his bankruptcy petition, Plaintiff filed a mailing matrix with the Bankruptcy Court that provided Defendant's correct address.

12.    On August 30, 2017, Plaintiff filed Schedules in his Bankruptcy Case, including, in part, "**Schedule E/F: Creditors Who Have Unsecured Claims**" which listed the subject debt

**COMPLAINT**                                    **-Page 3-**

on the 2 unsecured accounts at issue, credit card Account No. xxxx9135 ("9135 Account") and line of credit Account No. xxxx4596 ("4596 Account") (collectively referred to as the "Accounts") identifying Defendant as the Nonpriority Creditor for the Accounts.

13.   A true and correct copy of Plaintiff's Schedule E/F is attached hereto as Exhibit "A."

14.   On August 31, 2017 and September 1, 2017, the Bankruptcy Court sent a copy of the "Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline" ("Case Notice") for the Bankruptcy Case by electronic transmission and first-class mail, respectively, to Defendant; this constituted notice to Defendant of the Bankruptcy Case. The Case Notice warns all creditors "[t]he filing of the case imposed an automatic stay against most collection activity," and continues, "[t]his means that creditors generally may not take action to collect debts from the debtors or the debtors' property." It also states, "Creditors cannot demand repayment from debtors by mail, phone, or otherwise" and warns, "Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees." The United States Postal Service did not return the Case Notice sent to Defendant, so there is a presumption it was received.

15.   On November 20, 2017, Plaintiff filed an Amended Schedule E/F in his Bankruptcy Case, adding additional creditors and accounts, but continuing to list the Accounts and Defendant as the Nonpriority Creditor therefor.

16.   A true and correct copy of Plaintiff's Amended Schedule E/F is attached hereto as Exhibit "B."

**B.   During Plaintiff's Bankruptcy Case, Defendant Engaged Harassing Contacts with Plaintiff and Illegal Collection Activity in its Attempts to Collect on the Accounts.**

**COMPLAINT**                                    **-Page 4-**

17.     Despite the automatic stay being in effect, which, by operation of law, made it illegal for any creditor or servicer to contact Plaintiff and attempt to collect on the Account(s) while the Bankruptcy Case was pending, Defendant engaged in prohibited debt collection action on the Account(s) while Plaintiff's Bankruptcy Case was pending, including making collection calls to Plaintiff and sending him billing statements and correspondences, demanding payment or actions from Plaintiff to coerce payment from him.

**1)      During Plaintiff's Bankruptcy Case, Defendant Made Collection Calls to Plaintiff.**

18.     In September 2017, Defendant's representatives made at least three collection calls to Plaintiff regarding the Account(s) seeking payment of the underlying unsecured debt.

19.     On November 9, 2017, Defendant's representative from its collection department, 866-445-5286, called Plaintiff on his cellular phone seeking payment on the Account(s). Plaintiff informed the caller about his Bankruptcy Case which has been pending for 3 months, and that Defendant has been notified formally and his attorney has correspondence with Defendant in writing and by phone, and that Plaintiff did not want any further contact from Defendant.

20.     A redacted copy of correspondence Plaintiff sent documenting Defendant's 11/9/17 collection call to him is attached hereto as Exhibit "C" and incorporated herein by reference.

**2)      During Plaintiff's Bankruptcy Case, Defendant Sent Plaintiff a Billing Statement.**

21.     On or about September 27, 2017, Defendant sent Plaintiff a statement for the 9135 Account for billing cycle "August 28 – September 27, 2017," complete with a payment coupon and return envelope, representing in the "Payment Information" section that there was a

**COMPLAINT**                              **-Page 5-**

"Total Minimum Payment Due $257.00," by the "Payment Due Date 10/24/2017." Also, it includes a "**Late Payment Warning**: If we do not receive your Total Minimum Payment by the date listed above, you may have to pay a late fee of up to **$38.00** and your APRs may be increased up to the Penalty APR of **29.99%**. It also includes a "**Total Minimum Payment Warning**: If you make only the Total Minimum Payment each period, you will pay more in interest and it will take you longer to pay off your balance." The "Account Summary" also shows "**Fees Charged $27.00**" and "**Interest Charged $59.17**." The Statement instructs Plaintiff to "Mail payment to: Bank of America P.O. Box 851001 Dallas TX 75285-1001," and the detachable payment coupon instructs Plaintiff to: "**Mail this coupon along with our check payable to: Bank of America**" and to "*Check here for a change of mailing address or phone numbers*," and to "*Please provide all corrections on the reverse side*." The payment coupon also has printed on it, "Total Minimum Payment Due $257.00" and "Payment Due Date 10/24/2017." The back of the statement informs Plaintiff, "**PAYING INTEREST** – We will not charge interest on Purchases on the next statement if you pay the New Balance Total in full by the Payment Due Date and you had paid in full by the previous Payment Due Date." Also, the Transactions section shows "09/25 LATE FEE FOR PAYMENT DUE" in the "Amount 27.00," and shows "09/27 INTEREST CHARGED ON PURCHASES" in the "Amount 59.17."

22.    A redacted copy of the Statement dated 09/27/18 Defendant sent to Plaintiff is attached hereto as Exhibit "D" and incorporated herein by reference.

**3)    During Plaintiff's Bankruptcy Case, Defendant Sent Plaintiff at Least Three (3) Correspondences Demanding Payment on the Account**.

23.    On or about October 19, 2017, Defendant sent Plaintiff an e-mail correspondence informing him "[y]our account ending in 9135 is past due" and instructs him to "[p]lease make

**COMPLAINT**                            -Page 6-

payment arrangements as soon as possible." It also states, "[i]f you haven't made your payment, please use one of these convenient payment options:" followed by options to pay online or over the phone. It also states, "[t]his is an attempt to collect a debt and any information obtained will be used for that purpose."

24.    A redacted copy of the E-mail dated 10/19/17 Defendant sent to Plaintiff is attached hereto as Exhibit "E" and incorporated herein by reference.

25.    On or about October 19, 2017, Defendant sent Plaintiff a "Bill Pay Alert" by e-mail correspondence for Account 9135, stating "Our records indicate that a payment in the amount of 257.00 is due by 10/24/2017" and instructs Plaintiff to "View and Pay This e-Bill."

26.    A redacted copy of the E-mail dated 10/19/17 Defendant sent to Plaintiff is attached hereto as Exhibit "F" and incorporated herein by reference.

27.    On or about October 29, 2017, Defendant sent Plaintiff a bill on the 9135 Account by e-mail correspondence, stating "You have a new eBill from Bank of America Credit Card," "Due Date: 11/24/2017," "Amount Due: 410.00," and "Minimum Amount Due: 410.00." It also states, "No action is required if your payment has been scheduled," and it instructs Plaintiff to "View or Pay this eBill."

28.    A redacted copy of the eBill dated 10/29/17 Defendant sent to Plaintiff is attached hereto as Exhibit "G" and incorporated herein by reference.

29.    On or about November 10, 2017, Defendant sent Plaintiff a letter regarding Account 9135, stating that Defendant has been notified Plaintiff intends to file bankruptcy on the Account and that Defendant has closed the account, even though Defendant had been served with the Case Notice and Plaintiff and his attorney had informed Defendant's representatives

**COMPLAINT**                                    **-Page 7-**

about his Bankruptcy Case and made cease and desist requests to Defendant from all contact with Plaintiff.

30.     A copy of the letter dated 11/10/17 that Defendant sent to Plaintiff is attached hereto as Exhibit "H" and incorporated herein by reference.

31.     On November 19, 2017, Defendant sent correspondence to Plaintiff by E-mail, "Subject: You have not paid your e-Bill to Bank of America Credit Card using Online Banking." The correspondence states, "Our records indicate that a payment in the amount of 410.00 is due by 11/24/2017." It also states, "No action is required if your payment has been scheduled," and it instructs Plaintiff to "View or Pay this eBill."

32.     A copy of the E-mail date 11/19/17 Defendant sent to Plaintiff is attached hereto as Exhibit "I" and incorporated herein by reference.

**C.     The Subject Debt Was Discharged as to Plaintiff's Personal Liability in His Bankruptcy Case.**

33.     On November 22, 2017, the Bankruptcy Court issued an order granting Plaintiff a discharge under 11 U.S.C. § 727 ("Discharge Order"); the order discharged Plaintiff from any liability for the subject pre-petition claims on the Accounts. Included with the Discharge Order was an "**Explanation of Bankruptcy Discharge in a Chapter 7 Case**," warning that "**Creditors cannot collect discharged debts.**" It further states: "[t]his order means that no one may make any attempt to collect a discharged debt from the debtors personally," and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally," and "Creditors who violate this order can be required to pay debtors damages and attorney's fees."

34.     A true and correct copy of the Discharge Order is attached hereto as Exhibit "J."

**COMPLAINT**                                    -Page 8-

35.    On November 23, 2017 and November 24, 2017, the Bankruptcy Noticing Center mailed a copy of the Discharge Order to Defendant by electronic transmission and first class mail, respectively; these mailings constituted formal notice of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a) and they were not returned, so there is a presumption they were received.

36.    At no time during the pendency of the Bankruptcy Case did Defendant or any other person or entity object to or dispute the details of the subject claims for the Accounts contained in Schedule "E/F" of Plaintiff's bankruptcy petition.

37.    At no time during the pendency of the Bankruptcy Case did Defendant or any other person or entity file a proof of claim in Plaintiff's Bankruptcy Case.

38.    At no time during the pendency of Plaintiff's Bankruptcy Case did the Bankruptcy Court declare or hold that the subject pre-petition claims on the Accounts were non-dischargeable.

39.    At no time during the pendency of the Bankruptcy Case did Plaintiff reaffirm the subject claims on the Accounts or debt with any person or entity.

**E.    After Plaintiff's Bankruptcy Discharge and Cease and Desist Requests From Contact, Defendant Continued to Engage in Harassing Contacts and Illegal Collection Activity with Plaintiff in its Attempts to Collect the Discharged Debt from Him.**

40.    Defendant engaged in illegal and harassing debt collection activity against Plaintiff on the Account(s) post-discharge by: (1) sending Plaintiff at least 14 correspondences and notices; (2) sending Plaintiff 5 billing statements; (3) impermissibly obtaining and using Plaintiff's consumer report and confidential personal information therein from Experian; (4) misrepresenting information to Experian to impermissibly obtain Plaintiff's consumer report; and

**COMPLAINT**                                            -Page 9-

(5) reporting false, derogatory information about the Account to Equifax to be reported on Plaintiff's credit report and failing to correct this inaccurate reporting.

> **1)    Post-Discharge, Defendant Sent Plaintiff at Least Fourteen (14) Correspondences and Notices Demanding Payment and/or to Coerce or Deceive Him to Pay the Discharged Debt.**

41.    On December 19, 2017, Defendant sent correspondence to Plaintiff by E-mail, "**Subject**: You have not paid your e-Bill to Bank of America Credit Card using Online Banking" and "**Importance**: High." The correspondence states, "Our records indicate that a payment in the amount of 567.00 is due by 12/24/2017." It also states, "No action is required if your payment has been scheduled," and it instructs Plaintiff to "View or Pay this eBill."

42.    A redacted copy of the E-mail date 12/19/17 Defendant sent to Plaintiff is attached hereto as Exhibit "K" and incorporated herein by reference.

43.    On or about December 19, 2017, Defendant sent Plaintiff an e-bill and Past Due Bill Reminder on the 9135 Account. The bill shows that Defendant had sent Plaintiff a "Past Due Bill Reminder on 11/24/2017 for $410.00 and on 12/24/2017 for $567.00 and that there was an "Amount 567.00 Deliver By 01/04/2018" and "DUE JANUARY 24 $724.00." The ebill states "[t]his bill is ready to be paid," and instructs Plaintiff to "[m]ark the bill as paid if you paid it elsewhere."

44.    A redacted copy of the eBill Defendant sent to Plaintiff on 12/19/17 is attached hereto as Exhibit "L" and incorporated herein by reference.

45.    In response to receiving the 12/19/17 eBill, Plaintiff called Defendant on 12/19/17 at approximately 9:19 a.m. and spoke with Defendant's representative identified as Troy Hill ("Mr. Hill") and made another request that Defendant cease and desist from sending Plaintiff

bills (his bankruptcy attorney had also made several cease and desist requests to Defendant from contacting Plaintiff) and forwarded Mr. Hill a copy of the eBill, and the Discharge Order. Mr. Hill assured Plaintiff that he would transfer the eBill to the Bankruptcy Department and get the bills to stop being sent to Plaintiff.

46.    A redacted copy of an e-mail Plaintiff sent to his bankruptcy attorney, Holly Guelich, dated 12/19/17 evidencing Plaintiff's cease and desist requests made to Defendant, is attached hereto as Exhibit "M" and incorporated herein by reference.

47.     On or about December 28, 2017, Defendant sent Plaintiff a bill on the 9135 Account by e-mail correspondence, stating "You have a new eBill from Bank of America Credit Card," "Due Date: 01/24/2018," "Amount Due: 724.00," and "Minimum Amount Due: 724.00." It also states, "No action is required if your payment has been scheduled," and it instructs Plaintiff to "View or Pay this eBill."

48.    A redacted copy of the eBill dated 12/28/17 Defendant sent to Plaintiff is attached hereto as Exhibit "N" and incorporated herein by reference.

49.    On or about December 28, 2017, Defendant sent Plaintiff an e-bill and Past Due Bill Reminder on the 9135 Account. The bill shows that Defendant had sent Plaintiff a "Past Due Bill Reminder" on 11/24/2017 for $410.00 and on 12/24/2017 for $567.00 and that there was an "Amount 724.00 Deliver By 01/24/2018" and "DUE JANUARY 24 $724.00," noting "This amount is significantly more than your typical payment." The ebill states "[t]his bill is ready to be paid," and instructs Plaintiff to "[m]ark the bill as paid if you paid it elsewhere."

50.    A redacted copy of the eBill Defendant sent to Plaintiff on 12/28/17 is attached hereto as Exhibit "O" and incorporated herein by reference.

**COMMPLAINT**                                    **-Page 11-**

51.     On January 19, 2018, Defendant sent correspondence to Plaintiff by E-mail, "**Subject**: You have not paid your e-Bill to Bank of America Credit Card using Online Banking" and "**Importance**: High." The correspondence states, "Our records indicate that a payment in the amount of 724.00 is due by 01/24/2018." It also states, "No action is required if your payment has been scheduled," and it instructs Plaintiff to "View or Pay this eBill."

52.     A copy of the E-mail date 01/19/18 Defendant sent to Plaintiff is attached hereto as Exhibit "P" and incorporated herein by reference.

53.     On or about January 28, 2018, Defendant sent Plaintiff a bill on the 9135 Account by e-mail correspondence, stating "You have a new eBill from Bank of America Credit Card," "Due Date: 02/24/2018," "Amount Due: 886.00," and "Minimum Amount Due: 886.00." It also states, "No action is required if your payment has been scheduled," and it instructs Plaintiff to "View or Pay this eBill."

54.     A redacted copy of the eBill dated 01/28/18 Defendant sent to Plaintiff is attached hereto as Exhibit "Q" and incorporated herein by reference.

55.     On or about January 29, 2018, Defendant sent Plaintiff an e-bill and Past Due Bill Reminder on the 9135 Account. The bill shows that Defendant had sent Plaintiff a "Past Due Bill Reminder" on 12/24/2017 for $567.00 and on 01/24/2018 for $724.00 and that there was an "**Amount** 886.00 **Deliver By** 02/24/2018" and "DUE FEBRUARY 24 $886.00." The ebill states "[t]his bill is ready to be paid," and instructs Plaintiff to "[m]ark the bill as paid if you paid it elsewhere."

56.     A redacted copy of the eBill Defendant sent to Plaintiff on 01/29/18 is attached hereto as Exhibit "R" and incorporated herein by reference.

**COMPLAINT**                              **-Page 12-**

57.     On February 19, 2018, Defendant sent correspondence to Plaintiff by E-mail, "**Subject:** You have not paid your e-Bill to Bank of America Credit Card using Online Banking" and "**Importance:** High." The correspondence states, "Our records indicate that a payment in the amount of 886.00 is due by 02/24/2018." It also states, "No action is required if your payment has been scheduled," and it instructs Plaintiff to "View or Pay this eBill."

58.     A copy of the E-mail date 02/19/18 Defendant sent to Plaintiff is attached hereto as Exhibit "S" and incorporated herein by reference.

59.     On or about February 28, 2018, Defendant sent Plaintiff a bill on the 9135 Account by e-mail correspondence, stating "You have a new eBill from Bank of America Credit Card," "Due Date: 03/24/2018," "Amount Due: 1,050.00," and "Minimum Amount Due: 1,050.00." It also states, "No action is required if your payment has been scheduled."

60.     A redacted copy of the eBill dated 02/28/18 Defendant sent to Plaintiff is attached hereto as Exhibit "T" and incorporated herein by reference.

61.     On or about March 28, 2018, Defendant sent Plaintiff an e-bill and Past Due Bill Reminder on the 9135 Account. The bill shows that Defendant had sent Plaintiff a "Past Due Bill Reminder" on 02/24/2018" for $886.00 and on 03/24/2018 for $1,050.00 and that there was an "**Amount** 1050 **Deliver By** 03/28/2018" and "DUE MARCH 24 $1,050.00," noting "This amount is significantly more than your typical payment." The ebill states "[t]his bill is ready to be paid," and instructs Plaintiff to "[m]ark the bill as paid if you paid it elsewhere."

62.     A redacted copy of the eBill Defendant sent to Plaintiff on 03/28/18 is attached hereto as Exhibit "U" and incorporated herein by reference.

**COMPLAINT**                                      **-Page 13-**

63.    On March 19, 2018, Defendant sent correspondence to Plaintiff by E-mail, "**Subject:** Your eBill Due Date Is Approaching" and "**Importance:** High." The correspondence states, "Your eBill for Bank of America Credit Card is due by 03/24/2018 and we noticed you haven't made the payment yet," "**Amount: 1,050.00**" and "**Deliver By Date: 03/24/2018**."

64.    A copy of the E-mail date 03/19/18 Defendant sent to Plaintiff is attached hereto as Exhibit "V" and incorporated herein by reference.

65.    On March 28, 2018, Defendant sent correspondence to Plaintiff by E-mail, **"Subject:** You have a new eBill from Bank of America Credit Card" and **"Importance:** High." The correspondence states, "You have a new eBill from Bank of America Credit Card," "Due Date: 04/24/2018," **"Amount Due:** 1,172.00," and **"Minimum Amount Due:** 1,172.00."

66.    A copy of the E-mail date 03/28/18 Defendant sent to Plaintiff is attached hereto as Exhibit "W" and incorporated herein by reference.

67.    On or about March 29, 2018, Defendant sent Plaintiff an e-bill and Past Due Bill Reminder on the 9135 Account. The bill shows that Defendant had sent Plaintiff a "Past Due Bill Reminder" on 02/24/2018" for $886.00 and on 03/24/2018 for $1,050.00 and that there was an "**Amount** 1172 **Deliver By** 04/24/2018" and "DUE APRIL 24 $1,172.00." The ebill states "[t]his bill is ready to be paid," and instructs Plaintiff to "[m]ark the bill as paid if you paid it elsewhere."

68.    A redacted copy of the eBill Defendant sent to Plaintiff on 03/29/18 is attached hereto as Exhibit "X" and incorporated herein by reference.

**2)    Post-Discharge, Defendant Sent Plaintiff at Least Five (5) Billing Statements Demanding Payment of the Discharged Debt.**

**COMPLAINT**                                    **-Page 14-**

69.    On or about November 27, 2017, Defendant sent Plaintiff a statement for the 9135 Account for billing cycle "October 28 – November 27, 2017," complete with a payment coupon and return envelope, representing in the "Payment Information" section that there was a "Total Minimum Payment Due $567.00," by the "Payment Due Date 12/24/2017." Also, it includes a "**Late Payment Warning**: If we do not receive your Total Minimum Payment by the date listed above, you may have to pay a late fee of up to **$38.00** and your APRs may be increased up to the Penalty APR of **29.99%**. It also includes a "**Total Minimum Payment Warning**: If you make only the Total Minimum Payment each period, you will pay more in interest and it will take you longer to pay off your balance." The "Account Summary" also shows "**Fees Charged $38.00**" and "**Interest Charged $61.09**." The Statement instructs Plaintiff to "Mail payment to: Bank of America P.O. Box 851001 Dallas TX 75285-1001," and the detachable payment coupon instructs Plaintiff to: "**Mail this coupon along with our check payable to: Bank of America**" and to "*Check here for a change of mailing address or phone numbers*," and to "*Please provide all corrections on the reverse side*." The payment coupon also has printed on it, "Total Minimum Payment Due $567.00" and "Payment Due Date 12/24/2017." The back of the statement informs Plaintiff, "**PAYING INTEREST** – We will not charge interest on Purchases on the next statement if you pay the New Balance Total in full by the Payment Due Date and you had paid in full by the previous Payment Due Date." Also, the Transactions section shows "11/25 LATE FEE FOR PAYMENT DUE" in the "Amount 38.00," and shows "11/27 INTEREST CHARGED ON PURCHASES" in the "Amount 61.09."

70.    A redacted copy of the Statement dated 11/27/17 Defendant sent to Plaintiff is attached hereto as Exhibit "Y" and incorporated herein by reference.

**COMPLAINT**                                    **-Page 15-**

71.    On or about December 27, 2017, Defendant sent Plaintiff a statement for the 9135 Account for billing cycle "November 28 – December 27, 2017," complete with a payment coupon and return envelope, representing in the "Payment Information" section that there was a "Total Minimum Payment Due $724.00," by the "Payment Due Date 01/24/2018." Also, it includes a "**Late Payment Warning**: If we do not receive your Total Minimum Payment by the date listed above, you may have to pay a late fee of up to **$38.00** and your APRs may be increased up to the Penalty APR of **29.99%**. It also includes a "**Total Minimum Payment Warning**: If you make only the Total Minimum Payment each period, you will pay more in interest and it will take you longer to pay off your balance." The "Account Summary" also shows "**Fees Charged $38.00**" and "**Interest Charged $60.11**." The Statement instructs Plaintiff to "Mail payment to: Bank of America P.O. Box 851001 Dallas TX 75285-1001," and the detachable payment coupon instructs Plaintiff to: "**Mail this coupon along with our check payable to: Bank of America**" and to "*Check here for a change of mailing address or phone numbers*," and to "*Please provide all corrections on the reverse side*." The payment coupon also has printed on it, "Total Minimum Payment Due $724.00" and "Payment Due Date 01/24/2018." The back of the statement informs Plaintiff, "**PAYING INTEREST** – We will not charge interest on Purchases on the next statement if you pay the New Balance Total in full by the Payment Due Date and you had paid in full by the previous Payment Due Date." Also, the Transactions section shows "12/26 LATE FEE FOR PAYMENT DUE" in the "Amount 38.00," and shows "12/27 INTEREST CHARGED ON PURCHASES" in the "Amount 60.11."

72.    A redacted copy of the Statement dated 12/27/17 Defendant sent to Plaintiff is attached hereto as Exhibit "Z" and incorporated herein by reference.

**COMPLAINT**                                    **-Page 16-**

73.    On or about January 27, 2018, Defendant sent Plaintiff a statement for the 9135 Account for billing cycle "December 28 – January 27, 2018," complete with a payment coupon and return envelope, representing in the "Payment Information" section that there was a "Total Minimum Payment Due $886.00," by the "Payment Due Date 02/24/2018." Also, it includes a "**Late Payment Warning**: If we do not receive your Total Minimum Payment by the date listed above, you may have to pay a late fee of up to **$38.00** and your APRs may be increased up to the Penalty APR of **29.99%**. It also includes a "**Total Minimum Payment Warning**: If you make only the Total Minimum Payment each period, you will pay more in interest and it will take you longer to pay off your balance." The "Account Summary" also shows "**Fees Charged $38.00**" and "**Interest Charged $64.45**." The Statement instructs Plaintiff to "Mail payment to: Bank of America P.O. Box 851001 Dallas TX 75285-1001," and the detachable payment coupon instructs Plaintiff to: "**Mail this coupon along with our check payable to: Bank of America**" and to "*Check here for a change of mailing address or phone numbers*," and to "*Please provide all corrections on the reverse side*." The payment coupon also has printed on it, "Total Minimum Payment Due $886.00" and "Payment Due Date 02/24/2018." The back of the statement informs Plaintiff, "**PAYING INTEREST** – We will not charge interest on Purchases on the next statement if you pay the New Balance Total in full by the Payment Due Date and you had paid in full by the previous Payment Due Date." Also, the Transactions section shows "01/25 LATE FEE FOR PAYMENT DUE" in the "Amount 38.00," and shows "01/27 INTEREST CHARGED ON PURCHASES" in the "Amount 64.45."

74.    A redacted copy of the Statement dated 01/27/18 Defendant sent to Plaintiff is attached hereto as Exhibit "AA" and incorporated herein by reference.

**COMPLAINT**                                      **-Page 17-**

75.    On or about February 27, 2018, Defendant sent Plaintiff a statement for the 9135 Account for billing cycle "January 28 – February 27, 2018," complete with a payment coupon and return envelope, representing in the "Payment Information" section that there was a "Total Minimum Payment Due $1,050.00," by the "Payment Due Date 03/24/2018." Also, it includes a "**Late Payment Warning**: If we do not receive your Total Minimum Payment by the date listed above, you may have to pay a late fee of up to **$38.00** and your APRs may be increased up to the Penalty APR of **29.99%**. It also includes a "**Total Minimum Payment Warning**: If you make only the Total Minimum Payment each period, you will pay more in interest and it will take you longer to pay off your balance." The "Account Summary" also shows "**Fees Charged $38.00**" and "**Interest Charged $65.54**." The Statement instructs Plaintiff to "Mail payment to: Bank of America P.O. Box 851001 Dallas TX 75285-1001," and the detachable payment coupon instructs Plaintiff to: "**Mail this coupon along with our check payable to: Bank of America**" and to "*Check here for a change of mailing address or phone numbers*," and to "*Please provide all corrections on the reverse side*." The payment coupon also has printed on it, "Total Minimum Payment Due $1,050.00" and "Payment Due Date 03/24/2018." The back of the statement informs Plaintiff, "**PAYING INTEREST** – We will not charge interest on Purchases on the next statement if you pay the New Balance Total in full by the Payment Due Date and you had paid in full by the previous Payment Due Date." Also, the Transactions section shows "02/26 LATE FEE FOR PAYMENT DUE" in the "Amount 38.00," and shows "02/27 INTEREST CHARGED ON PURCHASES" in the "Amount 65.54."

76.    A redacted copy of the Statement dated 02/27/18 Defendant sent to Plaintiff is attached hereto as Exhibit "AB" and incorporated herein by reference.

**COMPLAINT**                          **-Page 18-**

77.     On or about March 27, 2018, Defendant sent Plaintiff a statement for the 9135 Account for billing cycle "February 28 – March 27, 2018," complete with a payment coupon and return envelope, representing in the "Payment Information" section that there was a "Total Minimum Payment Due $1,172.00," by the "Payment Due Date 03/24/2018." Also, it includes a "**Late Payment Warning**: If we do not receive your Total Minimum Payment by the date listed above, you may have to pay a late fee of up to **$38.00** and your APRs may be increased up to the Penalty APR of **29.99%**. It also includes a "**Total Minimum Payment Warning**: If you make only the Total Minimum Payment each period, you will pay more in interest and it will take you longer to pay off your balance." The "Account Summary" also shows "**Interest Charged $60.12**." The Statement instructs Plaintiff to "Mail payment to: Bank of America P.O. Box 851001 Dallas TX 75285-1001," and the detachable payment coupon instructs Plaintiff to: "**Mail this coupon along with our check payable to: Bank of America**" and to "*Check here for a change of mailing address or phone numbers*," and to "*Please provide all corrections on the reverse side*." The payment coupon also has printed on it, "Total Minimum Payment Due $1,172.00" and "Payment Due Date 04/24/2018." The back of the statement informs Plaintiff, "**PAYING INTEREST** – We will not charge interest on Purchases on the next statement if you pay the New Balance Total in full by the Payment Due Date and you had paid in full by the previous Payment Due Date." Also, the Transactions section shows "03/27 LATE FEE FOR PAYMENT DUE" in the "Amount 38.00," and shows "03/27 INTEREST CHARGED ON PURCHASES" in the "Amount 60.12."

78.     A redacted copy of the Statement dated 03/27/18 Defendant sent to Plaintiff is attached hereto as Exhibit "AC" and incorporated herein by reference.

**COMPLAINT**                                          **-Page 19-**

**3)    Post-Discharge, Defendant Impermissibly Obtained and Used Plaintiff's Consumer Report from Experian.**

79.    Despite the change in the legal status of the Account and its underlying debt upon the discharge being granted in Plaintiff's Bankruptcy Case, making the debt legally uncollectible and closing the Account by operation of law, Defendant, post-discharge, impermissibly obtained and used Plaintiff's consumer report from Experian.

80.    On December 7, 2017, Defendant impermissibly obtained and used Plaintiff's consumer report with Experian containing his confidential, personal information on December 7, 2017.

81.    Redacted excerpts of the relevant portions of Plaintiff's Experian credit report dated 4/6/2018 showing Defendant's impermissible account review inquiry/credit pull referenced above is attached hereto as Exhibit "AD."

**4)    Post-Discharge, Defendant Misrepresented Information to Experian in Order to Impermissibly Obtain and Use Plaintiff's Consumer Report.**

82.    In order to impermissibly obtain and use Plaintiff's consumer report and personal and confidential information retained by Experian, from which it accessed and obtained Plaintiff's consumer report, Defendant furnished false information to Experian, misrepresenting it had a legally permissible purpose to conduct the above listed inquiry. Defendant's alleged permissible purpose was that the Account(s) was open, due, owing and collectible and it had a right to insure or monitor the Account. This was false because the Account(s) was closed and legally uncollectible upon the discharge of its underlying debt.

83.    Plaintiff never sought credit from Defendant at any time after he filed his Bankruptcy Case and he never authorized Defendant to pull his credit report post-discharge.

There was no debtor creditor relationship between Plaintiff and Defendant after his discharge which would have given Defendant the right to obtain Plaintiff's consumer report from any of the CRAs. Thus, Defendant's obvious and only purpose for obtaining and using Plaintiff's consumer report was to impermissibly gather information about him in furtherance of its illegal, post-discharge collection attempts on the subject discharged debt. If Defendant denies this was its purpose, then it illegally obtained and used Plaintiff's personal and financial information, which is protected by law, and used it for an impermissible reason.

84.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show Defendant promised through its subscriber agreements or contracts with subject CRA(s) to properly furnish accurate information and correct any inaccurate information for accounts that have been discharged in bankruptcy; but Defendant has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow these requirements and agreements, which has resulted in its intended consequences of conducting the inquiry at issue in furtherance of its attempts to collect the debt, including, but not limited to, Plaintiff's consumer report at issue.

85.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that despite Defendant receiving dozens, if not hundreds, of account disputes regarding it engaging in these types of impermissible inquiries and credit pulls, Defendant has intentionally and knowingly not corrected its policies of furnishing false information to the CRAs to impermissibly obtain and use consumer's consumer reports, including, but not limited to Plaintiff's consumer report at issue.

**COMPLAINT**                                          **-Page 21-**

**5)    Post-Discharge, Defendant Furnished False, Derogatory Information to Equifax on the Account to be Reported on Plaintiff's Credit Report and Failed to Correct its Inaccurate Reporting of this Information.**

86.    On or about December 27, 2017, Defendant reported false, derogatory information to Equifax that the 9135 Account had a balance in the amount of $6,039, a past due amount of $567, and that the "Payment is payroll deductible." Defendant, however, failed to report information about Plaintiff's Bankruptcy Case and discharge and failed to furnish accurate information on the Account that the balance was zero and the Account closed since it was discharged in Plaintiff's Bankruptcy Case.

87.    Redacted and relevant excerpts from Plaintiff's Equifax credit report dated 1/3/18 showing Defendant's inaccurate credit reporting referenced above are attached hereto as Exhibit "AE."

88.    On or about March 27, 2018, Defendant reported false, derogatory information to Equifax that the 9135 Account was open with a balance in the amount of $6,305, a past due amount of $1,050, that the Account was 180 days or more past due and that the "Payment is payroll deductible." Defendant, however, failed to report information about Plaintiff's Bankruptcy Case and discharge and failed to furnish accurate information on the Account that the balance was zero and the Account closed since it was discharged in Plaintiff's Bankruptcy Case. As of April 6, 2018, this same false, derogatory information was still being reported on Plaintiff's Equifax credit report and Defendant failed to update and correct its inaccurate reporting on the Account.

**COMPLAINT**                                    **-Page 22-**

89.     Redacted and relevant excerpts from Plaintiff's Equifax credit report dated 4/6/18 showing Defendant's inaccurate credit reporting referenced above are attached hereto as Exhibit "AF."

90.     Defendant's inaccurate and false reporting to Equifax on the Account at issue and its failure to correct and update this information was a breach of its duties to provide accurate information to the CRAs under FCRA, 15 U.S.C. §1681s-2(a), which provides that furnishers of information to the CRAs have a duty to provide accurate information to them and to correct and update information that is not complete or accurate and shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate.

91.     At all relevant times post-discharge, Defendant knew how to report to the CRAs that a debt has been included in and/or discharged in bankruptcy. However, by reporting that Plaintiff continued to owe a balance on the Account and that the Account was past due, after the debt had been discharged in bankruptcy, Defendant misrepresented that Plaintiff had a legal obligation to repay the subject debt. A third party who obtains a copy of Plaintiff's credit report reflecting this incorrect information will assume Plaintiff is still liable for the subject discharged debt, and that Plaintiff reaffirmed the subject debt in her Bankruptcy Case and then failed to pay it, or that Defendant asserted a dischargeability complaint against Plaintiff on the debt in his Bankruptcy Case and prevailed and the Bankruptcy Court held the debt was not discharged as to Plaintiff's personal liability.

**COMPLAINT**                                    **-Page 23-**

92.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show Defendant intentionally and maliciously furnished false and inaccurate information to Equifax on the Account to be reported on his credit report, in accordance with its policies, procedures and practices, as stated hereinabove, when it knew: the debt on the Account was included in bankruptcy or discharged and that it could no longer legally attempt to collect the subject debt from Plaintiff.

93.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show Defendant has a policy and procedure to refuse to properly furnish and update information it furnishes to the CRAs to be reported on credit reports of consumers, like Plaintiff, to show that discharged debts have been discharged in bankruptcy. The purpose of having this policy and procedure is to keep false information on the credit reports of these consumers which incorrectly represents that discharged debt, on which Defendant is attempting to collect, is still due and owing; this false information consists of a past due balance shown as owing on these accounts, even though the underlying debts have been discharged. At all relevant times, Defendant has known that once a debt on an account is discharged in bankruptcy, there can be no balance owed on the account by the discharged debtor and the account is closed by operation of law. Nevertheless, Defendant intentionally refused to report the correct or current status of such discharged debt to the CRAs.

94.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that Defendant reports and updates information it furnished to the CRAs on hundreds or thousands of accounts each month, but has willfully and maliciously

refused to properly update the information on Plaintiff's discharged Account and others' accounts for debts discharged in bankruptcy upon which Defendant is attempting to collect.

95.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show Defendant promised through its subscriber agreements or contracts with the CRAs to properly furnish accurate information and correct any inaccurate information for accounts that have been discharged in bankruptcy; but Defendant has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow these requirements and agreements, which has resulted in its intended consequences of false information being reported on credit reports as to discharged debt in furtherance of its attempts to collect the debt, including, but not limited to, Plaintiff's credit reports at issue.

96.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that Defendant has a policy to "park" false information on accounts with debt discharged in bankruptcy with at least one of the discharged debtors' and account holders' consumer credit reports with the CRAs. The term "parking" is a term in the industry meaning keeping a false balance (or false account) on individuals' consumer credit reports so that the consumer will be forced to pay off the purported balance in order to qualify for a loan and obtain financing or refinancing, or to increase the consumer's credit score from the artificially lowered score, which directly resulted from the creditors' intentional and malicious conduct of reporting false information or not reporting correct information to the credit bureaus.

97.     In the context of "parking" an account, Defendant has a contractual duty, coupled with an obligation and duty under state and federal law, to accurately report the balance on such

**COMPLAINT**                            **-Page 25-**

accounts, but it willfully and maliciously ignores its contractual duties and refuses to obey applicable law.

98.     Defendant knows that "parking" an incorrect balance on accounts whose underlying debts have been discharged in bankruptcy will lead to false and defamatory information being published every time a consumer's credit report is accessed and reviewed by a person or entity, such as Plaintiff's consumer reports at issue, and this is the malicious and intentional design behind its actions at issue, with the goal to force discharged consumers, such as Plaintiff, to pay discharged debt.

99.     Here, Plaintiff's Equifax credit report at issue has been accessed by third parties numerous times since the subject debt was discharged in Plaintiff's Bankruptcy Case; therefore, the false information Defendant furnished to Equifax on the 9135 Account has been published to numerous third parties – which is what Defendant calculated and intended to happen.

100.    When a consumer who has discharged debt on an account pays the debt on such "parked" account, Defendant will claim that such payment was purely "voluntarily" or was to pay off a "moral obligation." Defendant, however, knows that by willfully and maliciously "parking" discharged debt on consumers' credit reports for accounts on whose debts it is trying to collect, illegal payment can be extorted from this group of innocent and unassuming consumers which includes Plaintiff.

101.    After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that despite Defendant receiving dozens, if not hundreds, of account disputes regarding this type of false credit reporting, Defendant continues to report false information to the CRAs on accounts included and/or discharged in bankruptcy, and it

**COMPLAINT**                                    **-Page 26-**

intentionally and knowingly has not corrected its policies of keeping false and damaging information from being reported and updated correctly on these consumers' credit reports, including, but not limited to Plaintiff's credit reports at issue.

## V. GROUNDS FOR RELIEF - COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et. seq*)

102.    Plaintiff repeats, re-alleges, and incorporates by reference the above Paragraphs Nos. 11 through 100 above, as if fully rewritten here.

103.    The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

(f) CERTAIN USE OR OBTAINING OF INFORMATION PROHIBITED. – A person shall not use or obtain a consumer report for any purpose unless –

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b (f).

104.    Section 1681b(a)(3) of the FCRA lists the all-inclusive purposes for which a consumer report can be obtained and, in relevant part, states:

(a) IN GENERAL. – * * * any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

\*\*\*

(3) To a person which it has reason to believe –

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

\*\*\*

**COMPLAINT**                                    **-Page 27-**

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information-

* * *

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

105.    Section 1681a(d)(1) defines a consumer report as:

(d) CONSUMER REPORT. –

(1) IN GENERAL. – The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of servicing as a fact in establishing the consumer's eligibility for-

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681(b) of this title.

15 U.S.C. § 1681a (d)(1).

106.   Defendant requested, obtained and used Plaintiff's consumer report from Experian without a permissible purpose post-discharge.

107.   Defendant misrepresented to Experian that its request to access and obtain Plaintiff's consumer report was so it could monitor, review or insure the Account that was purportedly open and collectible, which was false, or to complete a credit application from Plaintiff, when there was no such application.

**COMPLAINT**                                           **-Page 28-**

108.    If Defendant represented to Experian that it intended to use the information in Plaintiff's consumer report in connection with a valuation of, or an assessment of the credit or prepayment risks associated with an existing credit obligation on the Account or by Plaintiff, that would have been false, since there was no debtor-creditor relationship between Plaintiff and Defendant at the relevant times.

109.    When requesting and obtaining access to Plaintiff's consumer report and confidential information therein from Experian, as described hereinabove, Defendant had actual knowledge it did not have a permissible purpose to obtain and use Plaintiff's consumer reports from any of the CRAs.

110.    At all relevant times, Defendant had actual knowledge that, as of the discharge being granted in Plaintiff's Bankruptcy Case, the discharge injunction was in effect and Defendant was legally prohibited from pursuing any collection against Plaintiff on the subject discharged debt or communicating with Plaintiff about the Account and the underlying discharged debt to justify accessing and obtaining his confidential, personal information kept by the CRAs in his credit file or consumer reports.

111.    When Defendant obtained Plaintiff's consumer report post-discharge from Experian, it had actual knowledge Plaintiff had not requested new credit from it post-discharge or initiated a business transaction with it at any time since filing his Bankruptcy Case and it knew Plaintiff no longer had an existing credit obligation with it post-discharge. Thus, Defendant had actual knowledge it did not have a permissible purpose to access, obtain and use Plaintiff's consumer report and confidential information therein as it did.

**COMPLAINT**                                      **-Page 29-**

112.    At all relevant times, Defendant had actual knowledge Plaintiff did not authorize access and reviews of his consumer reports by Defendant, as there was no debtor-creditor relationship between the parties and the Account was closed and legally uncollectible. Accordingly, Defendant had actual knowledge it did not have a permissible purpose to access Plaintiff's consumer reports or credit file with the CRAs and confidential and protected information therein when it conducted the impermissible inquiry and access to Plaintiff's consumer report.

113.    For Defendant to request and obtain Plaintiff's private personal and financial information, in the face of actual knowledge it had no permissible purpose to do so, constitutes its knowing and willful violations of the FCRA.

114.    After a reasonable time to conduct discovery, Plaintiff believes he can prove Defendant obtained and used Plaintiff's Experian consumer report and private, personal and financial information therein for the illegal purpose of attempting to collect on the subject discharged debt.

115.    After a reasonable time to conduct discovery, Plaintiff believes he can prove Defendant used false pretenses, namely the representation it intended to use Plaintiff's consumer report for a permissible purpose, when it had no permissible purpose under the FCRA, in order to obtain and use Plaintiff's private personal and financial information for the illegal purpose of attempting to collect on the subject discharged debt.

116.    After a reasonable time to conduct discovery, Plaintiff believes he can prove Defendant is unwilling or unable to prevent its system(s) or agents from requesting and obtaining Plaintiff's consumer report without a permissible purpose, thereby subjecting Plaintiff to having

**COMPLAINT**                          **-Page 30-**

his private, personal and financial information disclosed without his consent, authorization or other legal justification.

117.   As a direct and proximate result of Defendant's conduct, as outlined above, Plaintiff has suffered injury, including, but not limited to, mental anguish and emotional distress, entitling him to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

118.   The injuries suffered by Plaintiff as a result of Defendant impermissibly obtaining and using his consumer report was attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2). Since Defendant's impermissible obtaining and use of Plaintiff's consumer report will have a continuing adverse impact on Plaintiff and the violations may be ongoing in nature, Defendant is liable for any and all future harm suffered by Plaintiff as a result of this actionable conduct.

## VI. GROUNDS FOR RELIEF - COUNT II

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

119.   Plaintiff repeats, re-alleges, and incorporates by reference the Paragraphs Nos. 11 through 117 above, as if fully rewritten here.

120.   Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

a)   Tex. Fin. Code § 392.301(a)(8), which prohibits Defendant from threatening to take an action prohibited by law; inasmuch as the bankruptcy discharge injunction prohibits anyone from attempting to collect debts discharged in bankruptcy *in personam*; inasmuch as the FCRA prohibits obtaining and using a consumer report without a permissible purpose; inasmuch as the common law protects Plaintiff's privacy rights and Defendant's actions at issue violated those rights; and the post-discharge collection calls Defendant made to Plaintiff's cellular

telephone were violations of the TCPA, Defendant's actions against Plaintiff, including all of the above-detailed collection calls, sending of statements, e-bills and correspondences, conducting the impermissible account review with Experian and the improper credit reporting with Equifax, Defendant violated this section of the TDCA;

b)    Tex. Fin. Code § 392.304(a)(8), which prohibits misrepresenting the character, extent, or amount of Plaintiff's debt; Defendant misrepresented to Plaintiff through the phone calls, statements, ebills and correspondences at issue the debt was past due and owing, and by reporting the incorrect information on the Account showing on Plaintiff's Equifax credit report and the impermissible account review inquiry showing on his Experan credit report as if there was still a debtor-creditor relationship between Plaintiff and Defendant, these were misrepresentations of the character, extent or amount of the subject debt in violation of the TDCA;

c)    Tex. Fin. Code § 392.304(a)(13), which prohibits representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges, if a written contract or statute does not authorize the additional fees or charges; here, 11. U.S.C. §524(a) prohibited Defendant from collecting on the Accounts post-discharge and assessing fees and costs to them post-discharge to try and collect from Plaintiff, thus representing to Plaintiff that interest and fees were continuing to be charged to the Account(s) post-discharge and making demand for such and warning that these would continue to increase monthly if Plaintiff did not make the demanded payment was a violation of this section of the TDCA; and

d)    Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, for the reasons stated in the preceding paragraphs (a-c). Defendant intentionally tried to coerce or deceive Plaintiff into paying the debt, while Defendant knew the Account was discharged in Plaintiff's bankruptcy, rendering the debt legally uncollectible from Plaintiff *in personam*.

121.    Under Tex. Fin. Code Ann. § 392.403, Defendant's actions at issue make it liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees under the TDCA. Also, Plaintiff's injuries resulted from Defendant's malice, and/or actual fraud which entitle Plaintiff to punitive damages.

**COMPLAINT**                                        **-Page 32-**

122.    Due to Defendant's conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorney's fees incurred in prosecuting this claim.

## VII. GROUNDS FOR RELIEF - COUNT III

### INVASION OF PRIVACY

123.    Plaintiff restates and reiterates herein Paragraph Nos. 11 through 121 above, as if stated herein in their entirety.

124.    When Defendant obtained Plaintiff's Experian consumer report at issue post-discharge, as stated hereinabove, this constituted an invasion of Plaintiff's private affairs and privacy rights. These invasions were ones that would be highly offensive to a reasonable person because confidential and sensitive, personal and financial information is included in a consumer report. Such wrongful acts caused injury to Plaintiff.

125.    When Defendant made harassing and illegal contacts with Plaintiff through post-discharge telephone calls, eBills, correspondences, notices and statements, demanding payment or actions to coerce payment of the discharged debt, even after Plaintiff and his attorney had made several cease and desist requests that Defendant stop these contacts with Plaintiff; these contacts constituted invasions of Plaintiff's private affairs. These invasions were ones that would be highly offensive to a reasonable person because Defendant was forbidden to contact Plaintiff post-discharge regarding the subject debt and these invasive contacts even continued after Plaintiff filed this lawsuit and was represented by the undersigned counsel, about which lawsuit and legal representation Defendant knew, further adding to Plaintiff's privacy expectations of not being contacted directly by Defendant. Such wrongful acts caused injury to Plaintiff, which resulted in his extreme emotional anguish, loss of time and inconvenience.

**COMPLAINT**                                   **-Page 33-**

126.    Plaintiff's injuries resulted from Defendant's malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VIII. GROUNDS FOR RELIEF – COUNTS IV AND V

### VIOLATION OF THE AUTOMATIC STAY AND BANKRUPTCY DISCHARGE INJUNCTION

127.    Plaintiff repeats, re-alleges, and incorporates Paragraphs 11 through 125 above as if set forth herein in their entirety.

128.    At all times material to this proceeding, Defendant had actual knowledge about Plaintiff's Bankruptcy Case and the discharge of the debt at issue.

129.    Defendant failed to cease its debt collection activity on the Account and debt at issue when it became aware Plaintiff filed for bankruptcy protection by sending him the subject statements, ebills, correspondences and making collection calls to him during his Bankruptcy Case.

130.    Defendant continued its prohibited debt collection activity and harassing of Plaintiff by trying to coerce payment of the discharged debt from him even after the debt was discharged in his Bankruptcy Case, as evidenced by all of Defendant's collection activity at issue, which continued even after Plaintiff and his attorney had made several cease and desist requests to Defendant and provided Defendant with proof of Plaintiff's Bankruptcy Case and discharge. .

131.    The totality of Defendant's pre-discharge actions at issue and the individual actions constitute violations of the automatic stay as set forth in 11 U.S.C. §362, and its post-discharge actions at issue were violations of the discharge injunction and actionable under 11 U.S.C. §524(a)(1)-(3).

**COMMPLAINT**                           **-Page 34-**

132.    The facts and background stated above demonstrate that Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court as they concern the bankruptcy filed by Plaintiff. With this prima facie showing, the duty is on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability. Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiff must prevail on his claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the filing and pendency of Plaintiff's Bankruptcy Case resulting in the automatic stay, and the Bankruptcy Court granting the discharge in Plaintiff's Bankruptcy Case, including, but not limited to, the discharge of the subject debt on the Account, resulting in the discharge injunction.

133.    Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for its conduct and actions. Any allegation of a good faith exception should not be allowed.

134.    Defendant violated the part of the Bankruptcy Court's Automatic Stay pertaining to 11 U.S.C. § 362(a)(1) which "operates as a stay, applicable to all entities, of—the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arouse before the commencement of the case under this title;…", regarding all of Defendant's prohibited harassing and collection actions it took at issue during the pendency of the Bankruptcy Case.

**COMPLAINT**                                    **-Page 35-**

135.    Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. § 524(a)(2) which "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not the discharge of such debt is waived;…", regarding all of Defendant's harassing and   prohibited collection actions at issue it took post-discharge.

136.    No exceptions exist under 11 U.S.C. §§ 362 and 524 or any other provision of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the automatic stay or discharge injunction, as stated above.

137.    The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint. None of the aforementioned has been approved by the Court here, and no waiver of the automatic stay, orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendant.

138.    Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiff with policing the misconduct of Defendant would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendant in this case

**COMPLAINT**                                    **-Page 36-**

can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant. No allegation of a mitigation as a defense should be allowed.

139.    Plaintiff has been injured and damaged by Defendant's actions and is entitled to recover judgment against Defendant, for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §362 and 524, and pursuant to the Court's powers under 11 U.S.C. § 105.

## IX.  *RESPONDEAT SUPERIOR* AND VICARIOUS LIABILITY

230.    After a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of any type for Defendant in the line and scope of such individuals' (or entities') empress or implied authority, through employment, agency, or representation, which imputes liability on Defendant for all actions at issue under a theory of *respondeat superior* and/or vicarious liability.

## X. DAMAGES

231.    In addition to any damages previously stated hereinabove, Defendant's actions at issue brought back to Plaintiff his negative emotions and anguish of having to file and go through bankruptcy and caused Plaintiffs new fears, stress, worry, frustration, uncertainty, anger, fear, defensiveness and anxiety to such a degree, resulting in his insomnia and other harm. It has also negatively affected his home environment. Plaintiff could not and cannot understand why Defendant continued -- even after the many cease and desist requests -- to try and collect the subject discharged debt from him and harass him during his Bankruptcy Case and after the debt on the Accounts was discharged as to his personal liability.

**COMPLAINT**                              **-Page 37-**

232.    Plaintiff's level of emotional distress and mental anguish and harm increased with each harmful contact from Defendant and knowledge of Defendant's credit pull and false derogatory credit reporting at issue.

233.    The conduct of Defendant at issue has proximately caused Plaintiff harm to his credit reputation, credit score and credit capacity; past and future monetary loss with regard to actions he has had to take investigating his claims at bar, making copies of credit reports and documents, expenses incurred related thereto and related to bringing this lawsuit and trying to get Defendant to not contact him or try to collect on the discharged debt; emotional anguish and a discernable injury to Plaintiff's emotional state and other damages, evidence for which will be presented to the jury.

234.    At all relevant times, Defendant knew, and continues to know, that a discharge order granted by a U.S. Bankruptcy Court means discharged debts are no longer legally collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to attempt to collect and deceptively collect on the subject discharged debt after the discharge of the subject debt in his Bankruptcy Case, at which time there was no debtor-creditor relationship between the parties and Defendant had no right to engage in its actions at issue.

235.    After a reasonable time for discovery, Plaintiff believes he will be able to show that despite Defendant receiving dozens, if not hundreds, of disputes complaining that it was illegally attempting to collect on debts discharged in bankruptcy, Defendant intentionally and knowingly has not corrected its policy of engaging in these actions.

**COMPLAINT**                                        **-Page 38-**

236.    After a reasonable time for discovery, Plaintiff believes he will be able to show that all actions taken by employees, agents, servants, or representatives of any type for Defendant at issue were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

237.    After a reasonable time for discovery, Plaintiff believes he will be able to show that all actions taken by Defendant at issue were performed maliciously, wantonly, recklessly, intentionally or willfully, and with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

238.    After a reasonable time for discovery, Plaintiff believes he will be able to show Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to attempting to knowingly collect on discharged accounts in accordance with its policies and procedures, and Defendant is subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies. Moreover, Plaintiff's injuries resulted from Defendant' malice and/or actual fraud, which entitle Plaintiff to punitive damages.

239.    Defendant's conduct reveals a conscious and reckless disregard of Plaintiff's rights. The injuries suffered by Plaintiff were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

240.    Due to Defendant's conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorney's fees incurred in prosecuting his claims.

**COMPLAINT**                                  **-Page 39-**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Robert A. Browne, Sr., prays the Court will:

A.    Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees as legally provided for violating the FCRA; TDCA; common law privacy rights; and the automatic stay and bankruptcy discharge injunction;

B.    Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.    Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.    Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Respectfully submitted,

/s/ James J. Manchee
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
Marilyn S. Altamira
State Bar Number 00796119
maltamira@mancheelawfirm.com
MANCHEE & MANCHEE, PC
2745 North Dallas Parkway, Suite 420
Plano, Texas 75093
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

**COUNSEL FOR PLAINTIFF**

**COMPLAINT**                                **-Page 40-**

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.


April 16th, 2018                              */s/ James J. Manchee*
Date                                                  James J. Manchee